**Ramiro PRADO HERNANDEZ,
Petitioner,**

**v.**

**Janet RENO, et al., Respondents.**

**No. C99–944WD.**

United States District Court,
W.D. Washington,
at Seattle.

Aug. 3, 1999.

Carol L. Edward, Seattle, WA, for Ramiro Prado Hernandez, petitioner.

Brian C. Kipnis, Alicia E. Wiltz, U.S. Attorney's Office, Seattle, WA, for Respondents.

### ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

DWYER, District Judge.

### I. INTRODUCTION

Ramiro Prado Hernandez petitions for a writ of habeas corpus, contending that it is unlawful for the Immigration and Naturalization Service ("INS") to reinstate his 1992 order of deportation without a hearing and without first acting on his application for adjustment of status. Respondents contend that this court lacks jurisdiction, and, on the merits, that the INS may lawfully deport petitioner without considering his application for adjustment of status.

The essential facts are undisputed. Prado Hernandez is a native and citizen of Mexico. He was ordered deported by the U.S. Immigration Court in San Diego in February 1992 for having entered the United States without inspection. He reentered illegally shortly thereafter and has been in the country ever since. He married Alexandra Terry, a United States citizen, on August 18, 1997. On September 30, 1997, Ms. Terry submitted an I–130 visa petition on behalf of her husband. On the same day, Prado Hernandez submitted an application for adjustment of status pursuant to 8 U.S.C. § 1255(i). As required by the statute, he paid the application fee plus a $1000 penalty so that he could remain in the United States while his application was being processed. On June 25, 1998, he and his wife were interviewed by the INS and it was discovered that Prado Hernandez had previously been deported. The INS issued a Notice of Intent/Decision to Reinstate Prior Order and took Prado Hernandez into custody. He then submitted Form I–212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal, and was released on bond. The visa petition and the I–212 application were approved. On August 21, 1998, the INS denied the application for adjustment of status, stating that it could not grant it because of the provisions of INA § 241(a)(5).

### II. JURISDICTION

The INS argues that the district court lacks jurisdiction. Contending that Prado Hernandez may obtain review of the reinstated removal order only in the court of appeals, it argues that challenging reinstatement of a past deportation order is analogous to seeking review of a denial of a request to re-open deportation proceedings, which is heard in the court of appeals. *See* 8 U.S.C. § 1252 (1999) (provid-

ing for review of final orders of removal in the court of appeals). The analogy fails to suggest a lack of jurisdiction. The petition requests an order requiring the INS to adjudicate Prado Hernandez's application for adjustment of status, and that is not a challenge to the reinstatement of the deportation order. *See Chan v. Reno,* 113 F.3d 1068, 1071 (9th Cir.1997) (district court has jurisdiction over challenge to denial of application for adjustment of status).

The INS contends also that 8 U.S.C. § 1252(g), as interpreted by the Supreme Court in *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), eliminates jurisdiction in this court. Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (1999). The law is in flux as to whether, and to what extent, district courts retain habeas corpus jurisdiction to hear challenges to immigration proceedings. The Ninth Circuit cases that addressed the issue have been vacated or withdrawn. *See Hose v. INS,* 141 F.3d 932, 935 (9th Cir.), *withdrawn and reh'g en banc granted,* 161 F.3d 1225 (1998); *Magana–Pizano v. INS,* 152 F.3d 1213 (9th Cir.1998), *amended by* 159 F.3d 1217 (9th Cir.1998), *vacated and remanded,* 526 U.S. 1001, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) (remanded for further consideration in light of *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)). Other circuits have reached disparate conclusions. For the reasons given in *Goncalves v. Reno,* 144 F.3d 110, 123–25 (1st

Cir.1998), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), *Wallace v. Reno,* 24 F.Supp.2d 104 (D.Mass. 1998), and *Mercado–Amador v. Reno,* 47 F.Supp.2d 1219 (D.Or. 1999), this court concludes that habeas corpus jurisdiction under 28 U.S.C. § 2241 exists to consider the non-discretionary questions of law raised by the petition.

## III. ANALYSIS

The INS seeks to deport Prado Hernandez under INA § 241(a)(5), which reads as follows:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (1999). This section took effect on April 1, 1997. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, § 309, 110 Stat. 3009, 3009–625 – 3009–627 (Sept. 30, 1996).

Prado Hernandez argues that Section 241(a)(5) does not apply to him because the phrase "prior order of removal" does not include a prior order of deportation, and because the section does not apply retroactively to an "order of removal" entered before IIRIRA's effective date. He contends also that INA § 245(i), reenacted after IIRIRA, permits him to apply for adjustment of status notwithstanding INA § 241(a)(5).[1]

---

1. In *Gomez–Iniguez v. Reno,* C98–1364WD (Nov. 3, 1998), this court decided that Congress did not intend INA § 241(a)(5) to bar adjudication of an application for adjustment

of status filed under INA § 245(i) before the effective date of IIRIRA. That case did not involve the statutory construction issues addressed in this order.

### A. The Meaning of "Order of Removal"

■ Section 309(d)(2) of IIRIRA states that "[f]or purposes of carrying out the [INA] . . . any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." This language clearly makes INA § 241(a)(5) applicable to orders of deportation.

### B. Retroactive Application of INA § 241(a)(5)

■ Prado Hernandez contends that INA § 241(a)(5) does not apply retroactively to orders of deportation entered before April 1, 1997. There is a strong presumption against applying statutes retroactively. *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Supreme Court set out a two-part retroactivity test. First, if Congress clearly prescribes the statute's proper reach, that is the end of the matter. *Id.* Second, in the absence of such a clear prescription, the Court must assess "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*

■ The statute is silent as to whether Section 241(a)(5) is intended to apply to deportations and reentries that occurred before the Act's effective date. The court must, therefore, consider whether the statute has retroactive effect. A statute is retroactive if it "attaches new legal consequences to events completed before its enactment." In *Samaniego–Meraz v. INS*, 53 F.3d 254, 256 (9th Cir.1995), the Ninth Circuit held that eliminating access for certain aliens to waiver of deportation under INA § 212(c) was not a retroactive application of the law because "Congressional repeal of a discretionary power to relieve an alien from deportation does not attach any *new* legal consequence to the pre-enactment events." The court also stated that "A statute is not retroactive merely because the facts upon which its subsequent application depends are drawn from a time antecedent to its effective date," and "[n]either is a law retroactive because it upsets expectations based in a prior law." *See Id.* Under *Samaniego–Meraz*, applying INA § 241(a)(5) to reinstate Hernandez Prado's prior deportation order without an opportunity for collateral review would not constitute retroactive application of the law.

### C. The provisions of INA § 245(i)

■ INA § 245(i) affords an "exception" to the "general rule" that "aliens who entered the country without inspection are ineligible to seek adjustment to lawful permanent status." *Chan v. Reno*, 113 F.3d 1068, 1071 (9th Cir.1997). It provides that an alien who is physically present in the United States but who "entered the United States without inspection . . . may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(i) (1999). The alien may take advantage of this procedure only by remitting $1,000. *Id.* The provision was originally enacted in 1994, to be effective between October 1, 1994 to October 1, 1997. *Chan*, 113 F.3d at 1071. It was amended on November 26, 1997, to permit aliens to apply for adjustment of status as long as a visa petition had been filed on their behalf before January 14, 1998. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub.L. No. 105–119, § 111(a), 111 Stat. 2440, 2458 (Nov. 26, 1997). In addition, INS regulations require applicants for adjustment of status to submit Form I–212, which is a request for permission to reapply for admission after deportation. *See* 8 C.F.R. § 212.2. Prado Hernandez and his wife submitted all the necessary papers on September 30, 1997, and the visa petition and Form I–212 were approved. All that remains is for the INS to exercise its discretion on Prado

Hernandez's application for adjustment of status under INA § 245(i).[2]

The INS contends that Prado Hernandez is not entitled to adjustment of status under INA § 245(i) because INA § 241(a)(5) provides that aliens subject to deportation under the section are ineligible for relief from deportation.[3] Before IIRIRA was enacted, an alien reentering the United States illegally after being deported would be placed into new deportation proceedings. With IIRIRA, Congress sought to expedite matters by providing, in INA § 241(a)(5), for the reinstatement of prior deportation orders without an opportunity for collateral review. Implementing regulations promulgated by the INS provide that an alien whose deportation order had been reinstated "has no right to a hearing before an immigration judge." 8 C.F.R. § 241.8(a).

Prado Hernandez's request for adjudication of his application for adjustment of status, however, does not constitute a challenge to his deportability under INA § 241(a)(5) or a collateral attack on the prior order of deportation. Nor can the application be deemed a request for relief from deportation; Prado Hernandez applied for adjustment of status before any deportation proceedings had commenced. Cf. Sang Seup Shin v. INS, 750 F.2d 122, 124 (D.C.Cir.1984) (once INS has served an order to show cause why an alien should not be deported, the alien may apply for adjustment of status only in deportation proceedings); 8 C.F.R. § 245.2(a)(1) (an alien in deportation or removal proceedings may only apply for adjustment of status in those proceedings). Here, the INS did not move to reinstate the prior deportation order until after Prado Hernandez had applied for adjustment of status. The language of Section 241(a)(5), therefore, is no bar to considering the application.

Moreover, that Prado Hernandez may be deportable under a separate provision of the INA does not affect his clear entitlement to apply for adjustment of status under Section 245(i). In determining the intent of Congress, the court must look to the language and design of the statute as a whole. K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Statutory provisions should be harmonized so that each is fully effective. United States v. Menasche, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Ambiguities should be resolved, when possible, in favor of the alien. INS v. Cardoza–Fonseca, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); INS v. Errico, 385 U.S. 214, 225, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966); Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948). The conspicuous omission of language barring aliens such as Prado Hernandez from adjustment under Section 245(i) suggests that Congress intended adjustment to be available in these circumstances, particularly in light of the fact that the provision was amended in November 1997, after the enactment of IIRIRA.[4] Section 241(a)(5) and Section 245(i) are not mutually incompatible: Although Prado Hernandez may be deportable under Section 241(a)(5), he is also enti-

---

2. The INS's denial of the application for adjustment of status on August 21, 1998, on the ground that it was barred by INA § 241(a)(5) from granting the application, did not constitute an exercise of the INS's discretion under INA § 245(i).

3. The INS also contends that Prado Hernandez is not eligible for adjustment of status because he is inadmissible for permanent residence under INA § 212, 8 U.S.C. § 1182. The INS, however, waived those grounds of inadmissibility when it approved Prado Hernandez's Form I–212 on September 14, 1998.

See 8 C.F.R. § 212.2(e) (stating that the district director having jurisdiction over the place where the alien resides is to consider the Form I–212 of an alien seeking adjustment of status).

4. The absence, in Section 245(i), of a cross-reference to Section 241(a)(5) or other language barring adjustment to aliens who illegally reentered after deportation is significant in light of the numerous other limitations and statutory cross-references in INA § 245 in general and Section 245(i) in particular.

tled to have his application for adjustment of status considered prior to deportation under Section 245(i).[5]

## IV. CONCLUSION

For the reasons stated, the petition for a writ of habeas corpus is granted. The denial of Prado Hernandez's application for adjustment of status is vacated, and the case is remanded to the INS for consideration of petitioner's application under INA § 245(i). The deportation of Prado Hernandez under INA § 241(a)(5) is stayed pending the decision on the application for adjustment of status.

The clerk is directed to send copies of this order to all counsel of record.

---

**5.** The INS contends that the court must defer to an agency interpretation of Section 245(i) as set forth in a July 15, 1999, memorandum from the Seattle District Director of the INS. That memorandum concludes that aliens deportable under INA § 241(a)(5) are not eligible for adjustment of status because Section 241(a)(5) "postdates and supersedes INA § 245(i) for aliens previously removed who illegally reenter." This conclusion is in error, however, in that INA § 245(i) actually postdates Section 241(a)(5), not the other way around. Section 241(a)(5) was enacted as part of IIRIRA on September 30, 1996, and INA § 245(i) was amended and re-enacted on November 26, 1997. Because it relies on this error and is contrary to the statutory mandate, the INS interpretation will not be adopted. *See Purba v. INS,* 884 F.2d 516, 517 (9th Cir.1989) ("Although an agency's construction of a statute that it is charged with administering is entitled to some deference, we keep in mind that the courts are the final arbiters of statutory interpretation.... Reviewing courts must not rubber stamp administrative decisions that they deem inconsistent with a statutory mandate.") (internal quotation marks and citations omitted). The logic of the memorandum, in fact, supports the contrary conclusion—that Section 245(i) "postdates and supersedes" Section 241(a)(5).